Copy mailed by Chambers 5-31-23 DH

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

MICHAEL N. KELSEY,                                   :
                     Plaintiff,                     :
                                           :

v.                                                   :       **OPINION AND ORDER**
                                             :

CHRISTOPHER SHERMAN, individually and                :       22 CV 1934 (VB)
in his official capacity; and KATHY HOCHUL,          :
individually and in her official capacity,           :
                     Defendants.                    :

-------------------------------------------------------------x

Briccetti, J.:

        Plaintiff Michael N. Kelsey, proceeding pro se,[1] brings this action against Christopher

Sherman, Board Examiner of the New York State Board of Examiners of Sex Offenders (the

"Board"), and New York State Governor Kathy Hochul under 42 U.S.C. § 1983 alleging New

York State's Sex Offender Registration Act ("SORA") is unconstitutional under the Due Process

and Equal Protection Clauses of the Fourteenth Amendment.

        Now pending is defendants' motion to dismiss the complaint pursuant to Rules 12(b)(1)

and 12(b)(6).  (Doc. #16).

        For the reasons set forth below, the motion is GRANTED.

        The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

        For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-

pleaded factual allegations in the complaint, documents attached thereto, and certain factual

---

[1]      Although plaintiff is proceeding pro se, he is a disbarred attorney.  See In re Kelsey, 148
A.D. 3d 257, 258 (2d Dep't 2017).

allegations in plaintiff's opposition, and draws all reasonable inferences in plaintiff's favor, as summarized below.[2]

I.     Factual Allegations

On June 30, 2015, plaintiff was charged in St. Lawrence County Court with one count of sexual abuse in the first degree in violation of N.Y. Penal Law § 130.65(2), one count of attempted sexual abuse in the first degree in violation of N.Y. Penal Law §§ 110.00, 130.65(2), one count of forcible touching in violation of N.Y. Penal Law § 130.52, and two counts of endangering the welfare of a child in violation of N.Y. Penal Law § 260.10(1).  (Doc. #2-1 at ECF 14–16).[3]  According to an indictment, which plaintiff attaches to his complaint, the conduct underlying the charges occurred in August 2014, when plaintiff subjected two minors, who were fifteen years old, "to sexual contact" while they were asleep and thus "physically helpless."  (Id. at ECF 14).

Plaintiff was convicted after trial, and on October 21, 2016, he was sentenced to seven years' imprisonment and ten years of post-release supervision.  As part of his sentencing, the County Court judge told plaintiff:  "You are now classified or certified as a sex offender and required to comply with the state Sex Offender Registration Act."  (Doc. #2-1 at ECF 18).

---

[2]     Because plaintiff is proceeding pro se, the Court considers new allegations in the opposition to the extent they are consistent with the complaint.  See Kelley v. Universal Music Grp., 2016 WL 5720766, at *6 (S.D.N.Y. Sept. 29, 2016).

Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

Plaintiff will be provided copies of all unpublished opinions cited in this decision.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009) (per curiam).

[3]     "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

Further, the Judge told plaintiff of several obligations under SORA including the duty to register

with the Division of Criminal Justice Services ("DCJS") for a period to "be determined at a risk

assessment hearing which will occur prior to your release," notify DCJS of "any change of home

address no later than ten days after you move," and inform DCJS if he were to attend, enroll at,

reside at, or be employed by any institution of higher education.  (Id.).  Moreover, plaintiff was

told that if he was "found to be a level one or two offender and not a sexual predator, you must

verify your home address once a year for the duration of your registration through the return of a

signed address verification form."  (Id. at ECF 18–19).  However, if plaintiff was "determined to

be a level three offender or a sexual predator, you must verify your home address in person with

your local law enforcement agency every 90 days."  (Id.).  In addition, plaintiff was informed

that if he failed to register or verify under SORA, he would be "guilty of a crime, and failure to

register may be the basis for revocation of your parole."  (Id.).

On February 9, 2022, defendant Sherman sent the County Court a Sex Offender

Designation Form, indicating plaintiff's release from prison was scheduled for May 8, 2022.

(Doc. #2-1 at ECF 21).  The Sex Offender Designation Form indicates the Board was

recommending plaintiff be designated a "Sexually Violent Offender," which is defined as "a sex

offender who has been convicted of a sexually violent offense defined in Correction Law section

168-a(3)."  (Id.).

Plaintiff alleges a hearing regarding his SORA risk designation level was scheduled for

March 30, 2022.  At the hearing, plaintiff was designated a sexually violent offender and

assigned a SORA risk level of 2.  (Doc. #29 ("Opp.") at 21).

Plaintiff alleges he has suffered several injuries as a result of SORA's certification,

registration, and notification provisions.  He contends sex offenders subject to SORA suffer from

"oppression and relegation . . . as second-rate or lesser citizens."  (Doc. #2 ("Compl.") at 31).[4]
He also alleges SORA's certification, registration, and notification provisions impose
punishment—and thus, injury—on sex offenders.

More specifically, plaintiff alleges a separate New York law, the Sexual Assault Reform
Act ("SARA"), bans sex offenders from living within 1,000 feet of a school.  Further, plaintiff
alleges New York Department of Corrections and Community Supervision ("DOCCS")
directives and policies "impede travel rights, job-training, and arbitrarily restrict parolee sex
offender's freedoms merely for being subject to the State's Sex Offender Registry."  (Compl. at
40).  For example, DOCCS requires parolees deemed "high risk," which include "Registered and
Discretionary Sex Offenders," to seek written approval from their parole officer before traveling
within the state.  (Id. at 42).  As to job training, plaintiff allegedly was denied admission into a
computer vocational class while imprisoned because of his "Instant Offense of Sexual Abuse
1st."  (Id. at 41).  Plaintiff further alleges he was denied from participating in a DMV Call Center
job-training program while he was imprisoned, because he had a "sex offense on record."  (Id.).

II.    Statutory Scheme

In 1995, New York enacted SORA to protect the public from "the danger of recidivism
posed by sex offenders."  1995 N.Y. Sess. Laws ch. 192 § 1.  SORA has a certification
requirement, which requires that a court, "upon conviction" of an individual for specified

---

[4]    Plaintiff's complaint was docketed in two parts, see Doc. #2 and Doc. #2-1, at ECF 1–13.
Further, plaintiff restarts the paragraph numbers in his complaint.  Accordingly, to avoid
confusion, all citations to "Compl." cite to the page numbers used by plaintiff, across Docs. ##2,
2-1, rather than paragraph or ECF page number citations.  However, citations to Doc. #2-1 and
the relevant ECF page number refer to documents attached as exhibits to the complaint.

offenses, "certify that the person is a sex offender and shall include the certification in the order

of commitment, if any, and judgment of conviction."  N.Y. Correct. Law § 168-d(1).

Before a sex offender is released from prison, the Board makes a risk recommendation to

the sentencing court.  N.Y. Correct. Law § 168-n(2).  The sentencing court then notifies the sex

offender that it will conduct a risk determination proceeding to

> determine whether you will be classified as a level 3 offender (risk of repeat offense
> is high), a level 2 offender (risk of repeat offense is moderate), or a level 1 offender
> (risk of repeat offense is low), or whether you will be designated as a sexual
> predator, a sexually violent offender or a predicate sex offender, which will
> determine how long you must register as a sex offender and how much information
> can be provided to the public concerning your registration.

Id. § 168-n(3).

Before discharge, release, or parole, SORA requires all sex offenders to register with the

DCJS.  N.Y. Correct. Law § 168-f.  Consequences of sex offender registration include:  "the

registrant's name, address, photograph and fingerprints remain on file with [DCJS]; the registrant

must verify his address annually to [DCJS], and must appear periodically at a law enforcement

agency to provide a current photograph; [and] local law enforcement agencies are notified when

a registrant moves into their jurisdiction."  People v. Knox, 12 N.Y.3d 60, 65 (2009) (citing N.Y.

Correct. Law §§ 168-b, 168-f, 168-j,168-l).  SORA also contains a notification provision, which

"permit[s] free public telephonic access to the [sex offender] registry and authorize[s] law

enforcement officers to disseminate information regarding . . . sex offenders to entities with

vulnerable populations."  Doe v. Cuomo, 755 F.3d 105, 110 (2d Cir. 2014); see N.Y. Correct.

Law § 168-l(6).

**DISCUSSION**

I.      Legal Standard

    A.      Rule 12(b)(1)

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011), aff'd, 568 U.S. 85 (2013). "The party invoking the court's jurisdiction bears the burden of establishing jurisdiction exists." Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

"When the Rule 12(b)(1) motion is facial, i.e., based solely on the allegations of the complaint . . . , the plaintiff has no evidentiary burden," and "[t]he task of the district court is to determine whether the [complaint] alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016).

In deciding a motion to dismiss under Rule 12(b)(1) at the pleading stage, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Conyers v. Rossides, 558 F.3d at 143. "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992) (citing Norton v. Larney, 266 U.S. 511, 515 (1925)). When a factual challenge to the Court's jurisdiction has been raised, "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits." Zappia Middle E. Constr. Co., Ltd. v. Emirate of Abu Dhabi, 215

6

F.3d 247, 253 (2d Cir. 2000).

When a defendant moves to dismiss for lack of subject matter jurisdiction and on other grounds, the court should consider the Rule 12(b)(1) challenge first.  Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

B.    Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under "the two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (collecting cases).  "Even in a pro se case, however, . . .

7

threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).  Nor may the Court "invent factual allegations" a plaintiff has not pleaded.  Id.

II.   New Allegations and Claims

As an initial matter, in his opposition, plaintiff attempts to add new allegations and assert new constitutional challenges premised on the First Amendment and procedural due process under the Fourteenth Amendment, which were not included in his complaint.

For pro se plaintiffs, "it is appropriate . . . to consider factual allegations made in their opposition papers, so long as the allegations are consistent with the complaint." Kelley v. Universal Music Grp., 2016 WL 5720766, at *6.  Although "a pro se plaintiff may not raise entirely new causes of action for the first time in his opposition papers, . . . the Court may consider new claims appearing for the first time in briefing if the claims could have been asserted based on the facts alleged in the complaint." Davila v. Lang, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018); see Mathie v. Goord, 267 F. App'x 13, 14 (2d Cir. 2008) (summary order) (affirming dismissal of pro se plaintiff's new constitutional challenge, first raised in an opposition, because the "complaint did not encompass that claim").

Thus, the Court may consider new factual allegations introduced in plaintiff's opposition that are consistent with the facts and claims in the complaint.  For example, it is appropriate for the Court to consider plaintiff's allegations elaborating upon his inability to reside within 1,000 feet of schools, travel freely, and obtain job training.  However, the complaint cannot be construed to allege SORA is unconstitutional under the First Amendment, or based on procedural due process under the Fourteenth Amendment.  Plaintiff first raised these arguments in his opposition.  (See Opp. at 15, 19–20, 22–23).  Plaintiff is incorrect that he alleged facts giving rise

8

to a First Amendment challenge in his complaint; he cannot cure this deficiency by attaching grievance forms to his opposition about parole conditions preventing him from attending church, associating with family in the presence of children, or expressing himself by wearing a Halloween costume.  (See Doc. #23 at ECF 138–41).  The same is true for new allegations in plaintiff's opposition regarding procedural due process violations because he did not plausibly allege facts giving rise to a procedural due process claim in the complaint.  Thus, the Court declines to consider these new claims and allegations in support.  See Davila v. Lang, 343 F. Supp. 3d at 267.

Accordingly, to the extent plaintiff seeks to bring a First Amendment or a Fourteenth Amendment procedural due process claim, such claims are dismissed without prejudice.[5]

III.   Standing

Defendants argue plaintiff lacks standing to bring this facial challenge because (i) he "does not show" SORA "was unconstitutionally applied to him" (Doc. #18 ("Mem.") at 10), and (ii) several of plaintiff's purported injuries are restrictions "not part of SORA," and plaintiff "does not explain how determining that SORA is unconstitutional would affect the applicability of these restrictions to him."  (Id. at 24 n. 11).

The Court disagrees and finds plaintiff has standing to challenge SORA because he has alleged the SORA provisions he seeks to challenge were unconstitutionally applied to him.

---

[5]     The Court further addresses these new claims in Part VI infra, in which plaintiff is granted leave to file an amended complaint.

However, plaintiff has failed to allege several of his alleged injuries are traceable to SORA, and therefore does not have standing to pursue constitutional claims regarding those injuries.

A.    Legal Standard

"The 'irreducible constitutional minimum' of standing in federal court requires: an (1) 'injury in fact'; (2) that is 'fairly traceable' to a defendant's challenged conduct; and (3) that is 'likely to be redressed' by a favorable decision." Mejia v. Time Warner Cable Inc., 2017 WL 3278926, at *7 (S.D.N.Y. Aug. 1, 2017) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560– 61 (1992)).  "To support standing, an injury must be both concrete and particularized." Id. (quoting Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016)).  Indeed, "a 'bare' statutory violation is insufficient to confer constitutional standing absent some 'concrete' harm." Id. (citing Spokeo, Inc. v. Robins, 136 S. Ct. at 1549; see also TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2205 (2021) ("Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may then sue that private defendant over that violation in federal court.").

Even "[t]he seminal cases in which the Court held state legislation unconstitutional 'on its face' did not involve any departure that a litigant only has standing to vindicate his own constitutional rights." Members of City Council of City of L.A. v. Taxpayers for Vincent, 466 U.S. 789, 796 (1984).  Where entire statutes are declared facially invalid, there is no "exception from the general rule that constitutional adjudication requires a review of the application of a statute to the conduct of a party before the Court." Id. at 798.

Further, "[s]tanding is not dispensed in gross." Lewis v. Casey, 518 U.S. 343, 358 n.6 (1996).  "Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008). The Second Circuit has interpreted this as a requirement that a party's injury-in-fact "must be

particular to the claim raised and the relief sought."  Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd., 726 F.3d 62, 80 (2d Cir. 2013).

    B.    Analysis

        1.    Certification, Registration, and Notification Requirement Injury

First, the Court concludes plaintiff has standing to bring his substantive due process and equal protection challenges to SORA because he has plausibly alleged he has been injured by SORA's certification, registration, and notification provisions, as applied to Level 2 Offenders. Here, because plaintiff was convicted of a sex offense, he was certified by the sentencing court as a sex offender, is required to register as a sex offender under SORA or face criminal prosecution, and his information is available to the public pursuant to SORA's notification provision.  "This is a very real injury" and is traceable to SORA, because "if the Court grants [plaintiff's] requested relief, [he] will no longer be required to register."  See, e.g., Doe v. Wasden, 558 F. Supp. 3d 892, 904 (D. Idaho 2021) (analyzing Idaho's version of SORA), appeal dismissed per stipulation, 2022 WL 19333636 (9th Cir. Dec. 12, 2022).  Likewise, if the Court were to declare SORA unconstitutional, plaintiff would no longer be certified as a sex offender subject to SORA and his information would not be released pursuant to SORA's notification provision.

Accordingly, plaintiff's alleged injuries caused by SORA's certification, registration, and notification requirements are concrete, traceable to SORA, and confer standing to challenge SORA.

        2.    Other Injuries

However, plaintiff alleges his injuries are "broader than mere registration requirements or the police notification/communication of registrant's information to community members.  This

Complaint attacks the broader scheme that begins with the certification and designation of offenders as 'sex offenders' and the profusion of laws and restrictions that follow" which lead to "oppression and relegation of those designated as [sex offenders to] second-rate or lesser citizens." (Compl. at 31). Plaintiff does not explicitly challenge the constitutionality of these other "laws and restrictions that follow" upon a SORA certification designation (id.); instead, he alleges these injuries support his substantive due process challenge to SORA.

Specifically, plaintiff alleges sex offenders are prohibited from living within 1,000 feet of a school under another New York statute, SARA. Further, he contends "NYS DOCCS directives and policies . . . impede travel rights, job-training, and arbitrarily restrict parolee sex offender's freedoms merely for being subject to the State's Sex Offender Registry. (Compl. at 40).

The Court addresses each claimed injury in turn.

    a.    <u>Residency Restriction</u>

The Court concludes plaintiff's injuries from the residency restrictions imposed by SARA are not fairly traceable to SORA's certification, registration, and notification provisions, and do not confer plaintiff with standing to challenge SORA on substantive due process grounds.

SARA "bar[s] offenders convicted of certain sex offenses from residing within 1,000 feet of a school" (the "SARA Residency Restriction"). <u>Alvarez v. Annucci</u>, 38 N.Y.3d 974, 976 (2022) (citing N.Y. Exec. Law § 259-c; N.Y. Penal Law § 220.24(b)). The SARA Residency Restriction applies to "a person <u>serving a sentence for an offense defined</u> in article one hundred thirty . . . of the penal law and the <u>victim of such offense was under the age of eighteen</u> at the time of such offense <u>or such person has been designated a level three sex offender</u> pursuant to

subdivision six of section one hundred sixty-eight-l of the correction law."  N.Y. Exec. Law §

259-c(14) (emphasis added).

Here, plaintiff was not designated a Level 3 sex offender under SORA.  Accordingly, he

is not subject to the SARA Residency Restriction because of his SORA risk assessment level.

Instead, plaintiff is subject to the SARA Residency Restriction because he is serving a sentence

on parole, resulting from convictions under article 130 of the New York Penal Law, specifically,

his convictions for sexual abuse in the first degree and attempted sexual abuse in the first degree

under Section 130.65(2) and forcible touching under Section 130.52.  These convictions

stemmed from plaintiff engaging in sexual conduct involving minors who were fifteen years old.

Thus, even if the Court were to invalidate SORA's certification, registration, or

notification provisions herein, plaintiff would still be subject to the SARA Residency

Requirement and prohibited from residing within 1,000 feet of a school.  Moreover, plaintiff has

not launched a substantive due process challenge against SARA. Thus, he lacks standing to

pursue claims challenging SORA based on injuries imposed by SARA, which are not traceable

to or caused by the provisions of SORA plaintiff is challenging.

> b.    Job-Training Restriction

Likewise, the Court determines plaintiff lacks standing to challenge SORA based on

injuries he allegedly suffered when he was denied job training opportunities, because such

injuries are not traceable to SORA's certification, registration, or notification provisions or the

defendants sued herein.

Plaintiff alleges "[i]n August 2021 [he] personally was denied admission into a Computer

Operator vocational class [in prison] that provided certification in Microsoft Office programs."

(Compl. at 41).  Plaintiff allegedly filed a grievance regarding this decision and alleges "[t]he

13

reason for [plaintiff's] rejection from such program was due to [his] 'Instant Offense of Sexual Abuse 1st' which the prison SORC referenced was in conformity with DOCCS policy as outlined in April 2021 department memorandum." (Id.).  The April 2021 DOCCS memorandum, which plaintiff attaches as an exhibit to the complaint, states "Mandatory Sex Offenders **are excluded** from participating in computer technology programs" and includes individuals "[s]ubject to registration with the New York State Sex Offender Registry" as mandatory sex offenders.  (Doc. #2-1 at ECF 36).

Plaintiff further alleges DOCCS "exclude[d] incarcerated individuals with a 'sex offense on record' from participating in the NYS DMV Call Center job-training program."  (Compl. at 41).  Plaintiff filed a grievance challenging the policy excluding sex offenders from the DMV program; in response, "[it] was explained to [plaintiff] at a grievance hearing that such an exclusion was a clause in the contract between DOCCS and DMV."  (Id. at 42; see Doc. #2-1 at ECF 37).

As to the Computer Operator program, plaintiff alleges DOCCS policy prohibited individuals who were "subject to" the sex offender registry from enrolling.  Although certification under SORA subjects sex offenders to SORA's registration requirements, plaintiff's injury of being excluded from this program is too attenuated to support a substantive due process challenge to SORA against Board Examiner Sherman and Governor Hochul.  Plaintiff does not sue the Commissioner of DOCCS or the Deputy Commissioner for Program Services who authored the relevant memorandum.  Further, he only seeks to challenge SORA, not the constitutionality of the DOCCS policy itself.  There must "be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not

before the court." Lujan v. Defs. of Wildlife, 504 U.S. at 560 (emphasis added).  Here, DOCCS's independent decision to exclude SORA-certified inmates from computer training is not fairly traceable to defendants Sherman or Hochul.

Moreover, plaintiff was excluded from the DMV job training because of his sex offense convictions and a contract between DOCCS and DMV, not the SORA provisions he seeks to challenge.  Such injuries cannot support a substantive due process challenge to SORA because plaintiff has not plausibly alleged these injuries are traceable to SORA's certification, notification, or registration provisions.

Accordingly, plaintiff does not have standing to challenge SORA on substantive due process grounds based on his purported exclusion from job training.

c.      Intrastate Travel Restriction

Finally, plaintiff lacks standing to challenge SORA based on purported injuries from being prohibited from traveling within New York without prior approval of his parole officer, because this injury is not caused by SORA's certification, registration, or notification provisions.

Plaintiff alleges DOCCS Directive 9240 permits parolees convicted of crimes to travel within New York state without a written travel permit if they "are not deemed a high-risk parolee as defined in Section III-E" of the Directive.  (Compl. at 42; see Doc. #2-1 at ECF 23–26). However, under Section III-E, "high-risk" parolees include "Registered and Discretionary Sex Offenders."  (Compl. at 42).  Such high-risk parolees, including registered and discretionary sex offenders, "must obtain approval from the Parole Officer prior to the proposed dates of travel" within New York state."  (Id.).  Thus, DOCCS's policy of restricting sex offenders on parole from traveling within the state without prior permission is not limited to sex offenders subject to SORA's certification, registration, and notification provisions; Directive 9240 equally applies to

"discretionary sex offenders," which plaintiff alleges are those sex offenders "not subject to SORA." (Id. at 41). Accordingly, drawing all inferences in plaintiff's favor, he would still be deemed a high-risk parolee subject to intra-state travel restrictions because of the offenses of which he was convicted, even if he were not subject to SORA. Thus, if the Court were to invalidate SORA's certification, notification, and registration provisions, plaintiff's injury would not be redressed and he would still not be free to travel within the state without permission.

Accordingly, plaintiff lacks standing to pursue a substantive due process challenge to SORA based on his purported injuries caused by DOCCS's intrastate travel restrictions.

IV.    Equal Protection Claim

Defendants argue plaintiff fails to state an equal protection claim because sex offenders are not similarly situated with offenders who are convicted of non-sex crimes.

The Court agrees.

"The equal protection clause directs state actors to treat similarly situated people alike." Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995). "Where, as here, Plaintiff does not claim to be a member of a protected class, he may bring an equal protection claim under one of two theories: selective enforcement or class of one." Rankel v. Town of Somers, 999 F. Supp. 2d 527, 544 (S.D.N.Y. 2014).

"A class-of-one claim exists 'where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 140 (2d Cir. 2010) (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). To state a class-of-one claim, the plaintiff must identify at least one individual with whom he can be compared. King v. N.Y. State Div. of Parole, 260 F. App'x 375, 380 (2d Cir. 2008) (summary order) (affirming

dismissal of claim because plaintiff "failed to identify a single individual with whom he can be compared for Equal Protection purposes").

"Class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010). "Because of the particular posture of a 'class of one' claim, the comparator's circumstances must be 'prima facie identical.'" Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011) (quoting Neilson v. D'Angelis, 409 F.3d 100, 105 (2d Cir. 2005), overruled on other grounds by Appel v. Spiridon, 531 F.3d 138 (2d Cir. 2018)).  The comparison to similarly situated individuals should "provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate government policy that an improper purpose—whether personal or otherwise—is all but certain." Neilson v. D'Angelis, 409 F.3d at 105.

"It is well established that this pleading standard is demanding." Hampshire Recreation, LLC v. Vill. of Mamaroneck, 2016 WL 1181727, at *6 (S.D.N.Y. Mar. 25, 2016), aff'd, 664 F. App'x 98 (2d Cir. 2016) (summary order).

Here, plaintiff alleges he is "a class of one and that he and all certified and registered sex offenders in New York State are intentionally being subjected to invidious discrimination as 'despised' members of society," namely "the different treatment that a person convicted of a sex offense must go through in Article 6-C certification leading to registration and subject to notification provisions, AND by the supplemental and collateral impositions and prohibitions that the New York State government demands of we sex offenders, but not of similarly situated criminals convicted of other crimes."  (Compl. at 21) (emphasis added).

The Court concludes sex offenders, such as plaintiff, and people convicted of non-sex offenses are not similarly situated.  "[F]elons who commit different crimes are not similarly situated."  Kasiem v. Paterson, 2011 WL 723612, at *2 (S.D.N.Y. Feb. 18, 2011).  And, in Petitpas v. Martin, the Second Circuit rejected an inmate's equal protection challenge to a prison risk assessment system, which allegedly prohibited inmates with higher "sex treatment need scores" from reducing their overall prison risk levels, as opposed to inmates without "sex treatment need scores" who were able to reduce their overall prison risk levels.  2021 WL 6101469, at **1-2 (2d Cir. Dec. 22, 2021) (summary order).  In that case, the Second Circuit found the plaintiff had not established the requisite level of similarity for a class-of-one claim, because "none of these proffered comparators—whether described generally as 'other inmates' or individually as specific inmates who received risk level reductions—are sex offenders, which is a basic difference motivating their disparate treatment" from the plaintiff, who was a sex offender.  Id. at *2 (collecting cases holding sex offenders are not similarly situated to non-sex offenders).

Accordingly, plaintiff has failed plausibly to allege an equal protection claim.

V.      Substantive Due Process Claim

        A.      Legal Standard

The Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Cont. amend. XIV § 1.  "Substantive due process is an outer limit on the legitimacy of governmental action," Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999), which "protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action

that is incorrect or ill-advised." <u>Kaluczky v. City of White Plains</u>, 57 F.3d 202, 211 (2d Cir. 1995).

To determine whether a statute or regulation "infringes a substantive due process right," the Court first must determine "whether the right is fundamental." <u>Goe v. Zucker</u>, 43 F.4th 19, 30 (2d Cir. 2022), <u>cert. denied</u>, 143 S. Ct. 1020 (2023). "Rights are fundamental when they are implicit in the concept of ordered liberty, or deeply rooted in this Nation's history and tradition." <u>Id</u>. When an infringed right is fundamental, courts "apply strict scrutiny, and the government regulation must be narrowly tailored to serve a compelling state interest." <u>Id</u>. However, "[w]hen a claimed right is not fundamental," the Court applies "rational basis review, and the government regulation need only be reasonably related to a legitimate state objective." <u>Id</u>.[6]

B.     <u>Punitive Nature of SORA</u>

Defendants argue plaintiff's claim that SORA's certification, registration, and notification provisions are "punishment" should be analyzed under the Eighth Amendment and must be dismissed.

The Court disagrees that plaintiff's claims arise under the Eighth Amendment, but nevertheless concludes plaintiff fails to state a substantive due process claim under the Fourteenth Amendment.

Plaintiff alleges "the certifying act labeling a convict as a sex offender is a form of punishment" and that SORA "is in fact punitive thereby subjecting it to 14th Amendment

---

[6]     To the extent plaintiff alleges the stigma-plus test applies to his substantive due process claim, he is incorrect. The stigma-plus test applies to <u>procedural</u> due process claims. <u>See, e.g.</u>, <u>Doe v. Mich. Dep't of State Police</u>, 490 F.3d 491, 502 (6th Cir. 2007) ("Our review of the caselaw has failed to identify any case that applies the stigma-plus test to a substantive due process claim.").

scrutiny." (Compl. at 5–6). Further, plaintiff requests the Court "extend[] constitutional oversight to government actions" that are generally "labeled as civil or police-powered regulatory measures" by applying the Fourteenth Amendment to plaintiff's "grievances" regarding SORA's "punitive nature." (Id. at 6). Plaintiff notes other courts have not "expressly considered whether the certifying act labeling a convict as a sex offender is a form of punishment" (id. at 5) and sex offenders such as plaintiff are "subjected to decades or lifetimes of stigmatizing certification, registration, and notification provisions of SORA not due to any genuine threat of recidivism." (Id. at 13)

      1.    Applicable Constitutional Amendment

First, defendants assert plaintiff's substantive due process claims should be analyzed under the Eighth Amendment, because (i) plaintiff's allegations concern the purportedly punitive nature of SORA's certification, notification, and registration requirements, and (ii) plaintiff is on parole and thus a post-conviction litigant.

Generally, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." City of Sacramento v. Lewis, 523 U.S. 833, 842 (1998). However, the Second Circuit has continued to consider substantive due process challenges to punishments imposed on convicts, without merging such claims into Eighth Amendment challenges. See, e.g., United States v. Quinones, 313 F.3d 49, 70 n.18 (2d Cir. 2002) (finding a convict's Eighth Amendment challenge to the death penalty was foreclosed by Supreme Court precedent, but considering his Fifth Amendment substantive due process challenge). In the context of capital punishment, for example, the Second Circuit has recognized "substantive due process rights afford limited

protection in the context of punishment beyond the protection provided by Eighth Amendment." See id.

Accordingly, the Court determines it is appropriate to consider plaintiff's claims regarding SORA's purportedly punitive nature as pleaded—i.e., as a substantive due process claim under the Fourteenth Amendment—rather than under the Eight Amendment.

2.      SORA's Purportedly Punitive Nature

Plaintiff alleges "SORA is a punitive statute" and, in contrast to prior ex post facto challenges to SORA, plaintiff requests the Court "consider whether the certification and sex offender classification is itself unconstitutional and punitive . . . from the perspective of the 14th Amendment not the ex post facto clause." (Opp. at 7).

Although plaintiff acknowledges no court has held SORA is punitive, he nevertheless urges the Court to declare it punitive in violation of substantive due process by arguing those other courts only considered SORA's registration and notification provisions, not the certification provision. (Opp. at 5). Therefore, plaintiff argues SORA violates his substantive due process rights by infringing his right to be free from punishment (i.e., the punishment of certification, registration, and notification), notwithstanding that recent research allegedly undermines the likelihood of sex offenders to recidivate, which was the legislature's goal in enacting SORA.

As the Second Circuit recognized in Doe v. Cuomo, "[t]he State is free . . . to make 'reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences.'" 755 F.3d at 110 (quoting Smith v. Doe, 538 U.S. 84, 103 (2003)).[7]

_____

[7]      Although plaintiff emphasizes he is not bringing an ex post facto challenge, precedent challenging SORA under the Ex Post Facto Clause—i.e., cases discussing whether SORA

Nevertheless, courts will sometimes consider whether a law that "is intended to be civil or regulatory" has an "effect [that] is punitive" by considering factors such as "whether, in its necessary operation, the regulatory scheme:  has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose."  Id. (quoting Smith v. Doe, 538 U.S. at 97).

The Second Circuit has determined SORA's notification and registration provisions are not punishment.  See Doe v. Cuomo, 755 F.3d at 110–13; Doe v. Pataki, 120 F.3d 1263, 1273 (2d Cir. 1997).  The Second Circuit's reasons for finding these provisions non-punitive under the Ex Post Facto clause support a finding that SORA's notification and registration provisions likewise are not punishment prospectively for substantive due process purposes.  For example, the Circuit found "strong evidence of [SORA's notification provisions'] nonpunitive nature" in "(1) the calibration of notification requirements to the offender's perceived risk of re-offense; (2) the regulation of public access to and limitations on dissemination of registrant information; and (3) the protections against misuse of information."  Id. at 110.  The Circuit also noted a bill jacket and accompanying materials for a 2006 amendment to SORA's registration and notification provisions indicate the legislature acted "out of a concern for public safety."  Id. Similarly, the Circuit found the registration provisions "serve[] the general goal of protecting members of the public from the potential dangers posed by convicted sex offenders," and "the duration, form, and frequency of registration were calibrated to the offender's risk classification."  Id. at 112.

---

unconstitutionally increases the punishment for a crime after it is committed—is relevant in determining whether SORA is unconstitutionally punitive on a prospective basis.

These considerations apply equally to plaintiff's claim that the notification and registration provisions are punitive, and weigh against it.  Thus, because the Court concludes these provisions are not punitive, plaintiff has not plausibly alleged any fundamental right is infringed by SORA's notification and registration provisions.

Likewise, the Court concludes SORA's certification provision is not punishment. SORA's certification requirements provide, "[p]ursuant to Correction Law § 168–d(1)(a), the court shall certify that the person is a sex offender based upon his or her conviction of certain enumerated offenses set forth in Correction Law § 168–a(2) and (3), and shall include the certification in the order of commitment, if any, and the judgment of conviction." People v. Matos, 209 A.D.3d 19, 24 (2d Dep't 2022), leave to appeal denied, 39 N.Y.3d 905 (2022). Under New York law, "sex offender certification pursuant to Correction Law § 168–d(1) is distinct from a risk level determination." Id. "Although certification under SORA "is pronounced [by the court] at sentencing" and "is effected by operation of law upon conviction," the New York Court of Appeals has held that "SORA certification is not part of a [criminal] sentence," and "it is evident that the entire SORA statutory scheme is designed to have a remedial and non-penal effect." People v. Buyund, 37 N.Y.3d 532, 537–40  (2021) (quoting People v. Hernandez, 93 N.Y.2d 261, 267 (1999)).  In fact, the "most significant adverse effects" of SORA certification "result from information most of which" would be publicly available aside from SORA and "flow essentially from the fact of the underlying conviction." Doe v. Cuomo, 755 F.3d at 111 (quoting Doe v. Pataki, 120 F.3d at 1278, 1280).

Therefore, plaintiff does not plausibly allege the punitive stigma he faces is a consequence of SORA certification itself, as opposed to his conviction for sex offenses involving

minors.  Because plaintiff has not plausibly alleged certification under SORA subjected him to punishment, he has not alleged SORA's certification provisions infringe a fundamental right.

      C.     <u>Rational Basis Review</u>

      Because freedom from sex offender certification, registration, and notification is "not a 'fundamental right,' as that term is used in constitutional analysis, this Court must apply the 'rational basis' test, which does not ask whether the statute is wise, nor even whether it is substantially related to an important government objective, but only whether it is 'rationally related to a legitimate government interest.'"  <u>Yunus v. Robinson</u>, 2018 WL 3455408, at *21 (S.D.N.Y. June 29, 2018) ("freedom from sex offender registration is not a fundamental right") (quoting <u>Winston v. City of Syracuse</u>, 887 F.3d 553, 566 (2d Cir. 2018)), <u>report and recommendation adopted</u> 2019 WL 168544 (S.D.N.Y. Jan. 11, 2019); <u>see</u> <u>Spiteri v. Russo</u>, 2013 WL 4806960, at *27 (E.D.N.Y. Sept. 7, 2013) ("Federal courts in this Circuit and across the country have ruled, similarly to the courts in New York, that a rational basis test is the correct level of scrutiny to be applied where there is a challenge to a sex offender registration requirement.") (collecting cases), <u>aff'd sub. nom.</u>, <u>Spiteri v. Camacho</u>, 622 F. App'x 9 (2d Cir. 2015) (summary order); <u>People v. Knox</u>, 12 N.Y.3d at 67.

      The Court concludes SORA's certification, registration, and notification requirements are all reasonably related to a legitimate state objective.

      SORA was enacted to combat "the danger of recidivism posed by sex offenders, especially those sexually violent offenders who commit predatory acts characterized by repetitive and compulsive behavior" and to assist the state to "identify, investigate, apprehend and prosecute sex offenders."  1995 N.Y. Sess. Laws ch. 192 § 1.  As the Court of Appeals has noted, SORA was enacted to protect vulnerable populations from sex offenders, prevent future

sex offenses, and monitor sex offenders.  See Spiteri v. Russo, 2013 WL 48060960, at *28 (collecting cases).

Each of these state interests are rationally related to (i) requiring courts to certify, at the time of sentencing, that individuals convicted of sex offenses are subject to SORA so that a risk assessment will be conducted and so offenders can properly be monitored; (ii) reporting information about sex offenders on a public sex offender registry; and (iii) notifying the public, particularly vulnerable groups, about sex offenders.  See, e.g., Doe v. Cuomo, 755 F.3d at 114 (affirming dismissal of substantive due process challenge to SORA's registration and notification provisions based on alleged infringement of plaintiff's right to privacy of personal information because SORA requirements "are rationally related to the aim of protecting public safety" and no fundamental right was violated).

Accordingly, plaintiff's substantive due process claims must be dismissed.

VI.    Leave to Replead

A district court ordinarily should not dismiss a pro se complaint for failure to state a claim "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)). Here, reading the complaint liberally, no allegations suggest plaintiff has a valid substantive due process or equal protection claim that he "inadequately or inartfully pleaded" and therefore should be "given a chance to reframe."  Id.  To the contrary, the Court finds that repleading these claims would be futile, because the problems with plaintiff's causes of action are substantive, and supplementary and/or improved pleading will not cure their deficiencies.  See id.

25

However, to the extent plaintiff attempted to raise Fourteenth Amendment procedural due process and First Amendment claims in his opposition to the motion to dismiss, the Court grants plaintiff leave to reframe these claims.

Accordingly, although he is not required to do so, if plaintiff wishes to pursue a First Amendment claim or a Fourteenth Amendment procedural due process claim, he may file an amended complaint.  To the greatest extent possible, plaintiff's amended complaint must address the deficiencies identified in this Opinion and Order.

To be clear, the Court is permitting (but not requiring) plaintiff to file an amended complaint, to pursue only First Amendment and Fourteenth Amendment procedural due process claims.  Plaintiff is not granted leave to file an amended complaint containing substantive due process or equal protection claims.

**The amended complaint will completely replace, not supplement, the existing complaint.**  Therefore, plaintiff must include in the amended complaint all information necessary for these claims, including all relevant allegations from his original complaint and opposition.

**CONCLUSION**

The motion to dismiss is GRANTED.

All of plaintiff's claims are dismissed.

Plaintiff is granted leave, should he wish to do so, to amend his complaint, in accordance with the instructions above.  By June 30, 2023, plaintiff shall file his amended complaint.  If plaintiff fails to file an amended complaint by June 30, 2023, the Court will enter judgment in defendants' favor and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purposes of an appeal.  Cf. Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motion.  (Doc. #16).

Chambers will mail a copy of this Opinion and Order to plaintiff at the address on the docket.

Dated:  May 30, 2023
        White Plains, NY

                                                          SO ORDERED:

                                                          _____
                                                          Vincent L. Briccetti
                                                          United States District Judge

27